## Hutchman's Executor's Appeal.

The proceeds of the sale of machinery in a building, whether it is realty or personalty, go to the execution-creditor, who sells it as personalty.

A judgment-creditor whose lien is upon the realty, cannot look to the fund raised by the sale as personalty of machinery severed from the freehold.

APPEAL from the Common Pleas of *Lawrence county*.

Josiah Hutchman had a judgment against Robert Wallace entered August 5, 1851. Under this judgment in September, 1853, he purchased at sheriff's sale the oil-mill, containing the engine which is the subject in controversy. This judgment was satisfied out of the proceeds of the sale. Turnbull and Welker had a judgment against Wallace entered April 24, 1852, of which Hutchman became assignee and owner. This judgment was partly satisfied by the same sheriff's sale, leaving a balance now claimed by the executor of Hutchman. After these judgments were entered, and before the sale of the real estate of Wallace, Thomas Pearson obtained judgment and issued execution against Wallace, levied on all the machinery in the oil-mill with the consent of Wallace, and sold the same as personal property. This sale took place in April, 1853, and Pearson became the purchaser and credited the proceeds of sale on his judgment. Wallace was the owner of the real estate, put in the machinery, and carried on the oil-mill till 1851, when he ceased manufacturing. Between that time and April, 1853, he sold the presses and some minor parts of the machinery, and suffered the remainder to become considerably dilapidated. That part of the machinery sold on the Pearson *fi. fa.* remained in the building, and was not severed until after Hutchman's death. Hutchman died in the spring of 1855, and Gilleland, his executor, presented his petition for distribution of the proceeds of the sale on Pearson's execution of the machinery sold as personal estate.

The auditor distributed the proceeds of sale to the Turnbull and Welker judgment. To this exceptions were filed by Pearson. After stating the facts, the following opinion was delivered by the court (AGNEW, P. J.):—

"Whatever may have been the lawfulness or unlawfulness of the sheriff's levy upon the machinery as personalty, and the power of Wallace to consent to a severance to the prejudice of a prior lien creditor, these questions are not before us. The claimant of the fund comes into the court, not as the representative of the purchaser at sheriff's sale of the realty; but as the owner of the Turnbull and Welker judgment, claiming the proceeds of the sale as personalty. Though Hutchman happened to be the owner of

VOL. III.—14

both judgments, as the purchaser at the sheriff's sale of the realty, he became the owner of the machinery in dispute, if wrongfully severed, and could have pursued it in an action of replevin, or its value in trover: Harlan *v.* Harlan, 3 *Harris* 507 ; S. C., 8 *Harris* 303 ; Coulter *v.* Philips, *Id.* 154 ; Heaton *v.* Findley, 2 *Jones* 307. But, as a purchaser, his title to it did not go to his executor, the present claimant. The owner of the realty, whether devisee or heir-at-law, cannot be compelled by the executor to consider the fund personalty, and thereby perhaps change its distribution to other hands. The rights of Hutchman as purchaser cannot be waived by the executor representing a different interest. If the severance were lawful, then being personalty, the execution of Pearson was entitled to the proceeds—supposing again that the severance was unlawful, then all the interest of the defendant as it existed at the time the lien of the judgment attached, having passed as we have seen to the purchaser of the realty at sheriff's sale, the proceeds of this sale represent the value of the machinery as well as the ground and buildings, and necessarily went to the liens in their order ; of which Turnbull & Welker received three times the value of the machinery sold on Pearson's writ. Consequently, Hutchman, as the owner of the Turnbull & Welker judgment, cannot now claim it a second time. The proposition therefore seems clear, that if the machinery in controversy passed under the sheriff's sale of the realty to Hutchman, it continued real estate, and his executor has no claim to it as such, and has no claim to it as owner of the Turnbull & Welker judgment; for the proceeds of the sale of the realty have been already distributed, and he has received his share. It will not do to reply, that the sale of the realty brought less than the value, by the wrongful seizure and sale of the machinery as personalty. If wrongful, the remedy is not by coming in upon the proceeds ; for that implies an acquiescence in the sale, and recognises the title of the purchaser of it as personalty ; but this no one but the purchaser of the realty can do, who is entitled to all that the lien of the judgment carries, under which he bought.

"One who claims to come in upon a fund as a lien creditor, comes in under the sale producing the fund, and cannot go behind it, by assuming a ground which attacks the sale itself, and the lawfulness of the conversion. If he claims as an adversary to the right to make the sale, his remedy is not in the distribution: Walter *v.* Pratt, 2 *Rawle* 265. The lien creditor may have his estrepement in the cases provided for by the Act of Assembly, or his action on the case where severance has improperly been made, and his debtor is insolvent: Roberts *v.* Dauphin Dep. Bank, 7 *Harris* 71.

" The distribution of the auditor is therefore set aside, and the proceeds of the sale decreed to go to the execution of Thomas Pearson, and the court further order that the costs of the proceed-

ings to obtain distribution, and the expense of the auditing, shall be paid by the petitioner.   By the Court."

This was the error assigned.

*McGuffin*, for appellant.

*McCombs*, with whom was *Kurtz*, for appellee.

The opinion of the court was delivered by

KNOX, J.—We are satisfied with the decision made in this case by the learned President of the Common Pleas.   Whether machinery in a building used for manufacturing purposes, is real or personal property, depends somewhat upon its character, its connexion with the building, and more upon the interest which the owner of the machinery has in the freehold.   But whether it is realty or personalty, an execution-creditor who levies upon it, and sells it as personalty, is entitled to the proceeds of the sale.   The purchaser buys at his own risk.   He gets a good title if it is personal property, and if not, he gets nothing.   Judgment-creditors whose liens have attached may prevent the severance where the machinery is realty, or perhaps pursue the property after severance, but they have no lien upon the fund raised by its' sale as personal estate.

Decree affirmed at the cost of the appellant.